

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-13-1994

# Malia, et al v. General Electric Company, et al.

Precedential or Non-Precedential:

Docket 92-7487

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

## Recommended Citation

"Malia, et al v. General Electric Company, et al." (1994). *1994 Decisions*. Paper 15.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/15

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 92-7487


SAM J. MALIA; JOHN A. GLUCKSNIS;
MATTHEW J. LOFTUS

v.

GENERAL ELECTRIC COMPANY; RCA
CORPORATION; RETIREMENT PLAN FOR
THE EMPLOYEES OF RCA CORPORATION AND
SUBSIDIARY COMPANIES; GE PENSION PLAN

                    Sam J. Malia, John A. Glucksnis
                    and Matthew J. Loftus, for
                    themselves and all others
                    similarly situated,

                              Appellants



On Appeal From the United States District Court
      for the Middle District of Pennsylvania
        (D.C. Civil Action No. 91-01743)



Argued on March 17, 1993


Before: STAPLETON, ROTH and LEWIS, <u>Circuit</u> <u>Judges</u>

(Opinion Filed May 13, 1994)

Thomas W. Jennings, Esquire
Kent Cprek, Esquire (Argued)
Sagot, Jennings & Sigmond
1172 Public Ledger Building
Independence Square West

Philadelphia, PA 19106
        Attorneys for Appellants

Joseph J. Costello, Esquire
Robert J. Lichtenstein, Esquire
Mark S. Dichter, Esquire (Argued)
Morgan, Lewis & Bockius
2000 One Logan Square
Philadelphia, PA 19103
        Attorneys for Appellees


OPINION OF THE COURT


ROTH, <u>Circuit Judge</u>:


**I.**

Appellants challenge the results of the merger of two large pension plans. The central issue of this case is whether pension plan participants whose plan is merged with another pension plan are entitled by law to receive only the defined benefits that they had actually accrued under the previous plan or are also entitled to receive a share of any surplus assets in their pension plan. Appellants allege that under two distinct sections of the Employee Retirement Income Security Act of 1974 ("ERISA") they are entitled to a share of the surplus assets that existed in their pension plan at the time of the merger. Appellants cite no case law supporting this position, relying solely on statutory language and legislative history. Appellants also allege that their employer's conduct of the merger violated its fiduciary duty under ERISA. Our detailed review of appellants' allegations

2

and argument convinces us that the district court correctly dismissed their claims.

## II.

Plaintiffs were entitled to receive benefits under RCA Corporation's ("RCA") pension plan as long-time employees of RCA and contributors to its pension fund. RCA's pension plan was a defined benefit plan that required employees to make contributions to the plan in order to receive a specified level of benefits upon retirement. In 1986, General Electric ("GE") bought out RCA, which became a wholly-owned subsidiary of GE. General Electric also sponsored a defined benefits plan for its employees.

Upon hearing of GE's intention to merge the two plans, appellant Sam J. Malia withdrew his contributions from the RCA plan effective December 10, 1988. In January 1989, the RCA and GE pension benefit plans were merged, and Malia's two co-appellants became participants in the GE pension plan. At the time of the merger, RCA's pension plan had residual assets -- assets in excess of liabilities -- of roughly $1.3 billion. The core of appellants' argument is that GE improperly "plann[ed] the capture of more than $1 billion in residual assets of the RCA Pension Plan for its own benefit." They further allege that GE intended to convert the RCA pension plan surplus to offset its own liabilities to GE employees. They contend that GE's capture of the surplus was improper in that under 29 U.S.C. §§ 1058 and 1344(d)(3) the RCA pensioners were entitled to receive a share of

3

the excess assets from the former RCA pension plan.[1]  However,

appellants fail to point out that the assets of the GE plan also

exceeded its liabilities by nearly $7.5 billion.  Thus, all

benefits that had accrued under the RCA plan were fully funded

and protected under the merged GE-RCA plan.

Appellants further allege that GE intentionally misled RCA plan participants in an effort to get them to cash out of the plan in order to increase GE's share of any future distribution of residual assets, that GE breached a fiduciary duty owed to plaintiffs under 29 U.S.C. §§ 1021-25 by failing to inform them of a possible forfeiture of their interest in residual assets from the RCA plan, and that GE improperly failed to appoint an independent representative of the pension plan participants to review and approve the plan merger under 29 U.S.C. §§ 1104 and 1106(b)(1).

On August 10, 1992, the district court granted defendants'

Rule 12(b)(6) motion to dismiss all counts.  This appeal

followed.  We conclude that the district court correctly

dismissed appellants' complaint on the ground that it failed to

state a claim.

---

[1]GE did not, in fact, take steps to terminate the merged pension plan in an effort to capture the surplus funds. Appellants attribute this inaction to changes in the law which made mandatory the distribution of a significant portion of the surplus of a pension plan to employees upon termination of the plan.

**III.**

The jurisdiction of the district court rested on 29 U.S.C. §1132(e). The appellate jurisdiction of this Court rests on 28 U.S.C. § 1291. As we are reviewing the district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim, our standard of review is plenary. Unger v. National Residents Matching Program, 928 F.2d 1392, 1394 (3d Cir. 1991). In addition, all facts alleged in the complaint and all reasonable inferences that can be drawn from them must be accepted as true. Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990).

IV.

Appellants' complaint alleges that GE violated ERISA. As this Court has stated, "ERISA provides for comprehensive federal regulation of employee pension plans . . . . [T]he major concern of Congress was to ensure that bona fide employees with long years of employment and contributions realize anticipated pension benefits." Reuther v. Trustees of Trucking Employees of Passaic & Bergen County Welfare Fund, 575 F.2d 1074, 1076-77 (3d Cir. 1978). We will review appellants' contentions with this regulatory concern in mind.

A.   Distribution of Residual Assets

In general, pension plans like the RCA and GE plans hold a portfolio of investments that are managed by the plan administrator in order to provide in the future a defined set of

5

accrued benefits for the pension plan participants.  When the

investments of a pension plan increase in value more rapidly than

the anticipated liabilities of the plan, an actuarial surplus

results that fluctuates as the value of the plan's portfolio

changes.[2]  Employers are permitted to recover the surplus assets

of a pension plan under some circumstances if the plan is first

terminated.  See Edward Veal & Edward Mackiewicz, Pension Plan

Terminations 211-12 (1989).

Appellants acknowledge that their accrued benefits under the RCA plan were adequately protected under the merged plan.  What they seek is to have these benefits increased by a share of the residual assets which existed in the RCA pension plan at the time of its merger with the GE plan.  For authority, appellants rely on two distinct sections of ERISA, 29 U.S.C. §§ 1058 and 1344(d)(3).  Appellants contend that these two sections, when

---

[2]ERISA permits both defined benefit and defined contribution plans to require employee contributions.  Chait v. Bernstein, 835 F.2d 1017, 1019 n.7 (3d Cir. 1987).  In a "defined benefit" plan such as the RCA and GE plans, benefits are not dependent upon the current or future assets of the plan.  The employer must provide a "defined benefit" to the plan participant upon retirement, termination or disability, id., and the employer must satisfy shortfalls if the actuarial assumptions of the plan prove incorrect.  In contrast, in a "defined contribution" plan, the benefits paid upon retirement are dependent upon the amounts contributed by the employee or employer on behalf of the plan participant.  29 U.S.C. § 1002(34).  On the surface, it may appear that an employer profits from employee contributions when the employer does not distribute residual assets to plan participants.  Residual assets are, however, a function of the actual rate of return on plan investments exceeding actuarial expectations of plan asset performance.  In a defined benefit plan, just as an employer would be required to fund any deficiency in assets resulting from poor plan asset performance, any excess in assets resulting from superior plan asset performance typically accrues to the employer's benefit by reducing the out-of-pocket contribution the employer must make to maintain required funding levels for the present value of the defined benefits.  Therefore, a defined benefit plan containing residual assets by its nature benefits an employer; the benefit does not come about simply in the context of a merger or termination.  Cf. Bruce, Pension Claims:  Rights and Obligations at 18 (2d ed. 1993).

read together, support their claim. The first section, § 1058, protects pension plan beneficiaries from losing benefits through the merger or consolidation of pension plans. It provides that: "A pension plan may not merge or consolidate with, or transfer its assets or liabilities to any other plan . . . unless each participant in the plan would (if the plan were then terminated) receive a benefit immediately after the merger, consolidation or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation or transfer (if the plan had then terminated).

The second, § 1344(d)(3), governs the distribution of residual plan assets in the event of a plan termination.[3]

We agree with appellants that the language of § 1058 should be read together with § 1344 as a whole in order to understand the "benefits" that would be payable at the time of the hypothetical termination envisaged in § 1058. The problem with appellants' argument is that, in the situation of a merger of pension plans, appellants equate the "benefits" receivable, as defined in § 1058 as of the time of a hypothetical termination, with the "residual assets" which may ultimately be distributed under § 1344(d)(3) in the case of an actual termination. An examination of § 1344, however, demonstrates that "benefits" are distinguished from "assets" in the language of § 1344.

Section 1344(a) sets out the priority of allocation of assets of the plan on termination, giving first priority to accrued benefits derived from a participant's contributions to the plan which were not mandatory contributions; second priority to accrued benefits derived from mandatory contributions; third

---

[3] § 1344 controls the allocation of assets on the termination of a single-employer plan. The GE pension plan is a single-employer defined benefit plan. § 1344(d)(3)(A) sets out the priority of residual asset distribution in connection with such a termination.

priority to benefits payable as an annuity; and fourth priority to other and additional benefits.  Subsections 1344(b) and (c) provide for adjustment of allocations and increase or decrease in value of assets during the termination process.  Subsection 1344(d) then regulates the distribution of residual assets to the employer after the satisfaction of all liabilities to plan participants and their heir beneficiaries.  As described in §1344(a), those "liabilities" are the designated benefits payable to the participants.  Section 1344(d)(3)(A) then provides that, before any residual assets are distributed to the employer, "any assets of the plan attributable to employee contributions . . . shall be equitably distributed to the participants who made such contributions . . .."

This language of § 1344 demonstrates clearly that "benefits" are elements that are conceptualized and treated differently in a plan termination than are the "assets" of that plan.  "Benefits" are computed in a different manner than "assets."  Accrued benefits are placed on the liability side, rather than on the asset side of the balance sheet.  "Residual assets" are computed only after liability for accrued benefits has been satisfied; "residual assets" are payable to the employer only after assets attributable to employee contributions have been returned to the employees.

The Treasury Regulation, interpreting pension plan mergers, corroborates this distinction between "benefits" and "assets" which is made in § 1344. It provides:[4]

> (e) Merger of defined benefit plans -- (1) General rule. Section 414(1) compares the benefits on a termination basis before and after the merger. If the sum of the assets of all plans is not less than the sum of the present values of the accrued benefit (whether or not vested) of all plans, the requirements of section 414(1) will be satisfied merely by combining the assets and preserving each participant's accrued benefits. This is so because all the accrued benefits of the plan as merged are provided on a termination basis by the plan as merged. However, if the sum of the assets of all plans is less than the sum of the present values of the accrued benefits (whether or not vested) in all plans, the accrued benefits in the plan as merged are not provided on a termination basis.

Moreover, the district court, in its opinion dismissing appellants' claims, correctly noted that "benefits" under § 1058 have consistently been held under both regulations and case law to refer to "accrued benefits" and not to include projected residual assets of a plan after termination. Malia v. General Electric Co., slip op. at 6-7, (E.D. Pa., Aug. 10, 1992). The district court cited both Van Orman v. American Ins. Co., 608 F. Supp. 13, 25 (D.N.J. 1984) and In re Gulf Pension Litigation, 764 F. Supp. 1149, 1185 (S.D. Tex. 1991) for the proposition that the

---

[4]These regulations were promulgated under 26 U.S.C. § 414(1), the Internal Revenue Code counterpart to ERISA § 1058 which has almost the same language as § 1058. In the ERISA Reorganization Plan of 1978 the Treasury Department was assigned responsibility for issuing regulations under certain provisions of ERISA, including § 1058. See 44 Fed. Reg. 1065 (attached to D's brief). Thus, "all regulations implementing the provisions of [sections 1058 and 414(1)] have been promulgated by the Secretary of the Treasury, mostly under § 414(1) of the Internal Revenue Code." Van Orman v. American Ins. Co., 608 F. Supp. 13, 24 n.3 (D.N.J. 1984), on remand from 680 F.2d 301 (3d Cir. 1982).

relevant Treasury Department regulations correctly interpreted "benefits" under § 1058 as being limited to "accrued benefits," rather than including all benefits to which a plan participant would be entitled upon termination.

Appellants attempt to discredit the district court's opinion as relying on "irrelevant and obsolete authority." However, the 1987 changes in 29 U.S.C. § 1344(d)(3) raised by appellants are not relevant to this issue, and the facts of <u>Van Orman</u> and <u>Gulf Pension</u> are quite similar to the case at issue.

Our interpretation of this ERISA language is supported by the recent decision of the Seventh Circuit in <u>Johnson v. Georgia-Pacific Corp.</u>, No. 93-2357, 1994 WL 92167 (7th Cir. March 23, 1994). <u>Johnson</u> involved a suit by pensioners who complained that the promised pension benefits of current employees could not be increased without a corresponding increase in the retirees' pensions. The retirees asserted that it was their contributions that had produced the surplus by which the current employees' benefits were increased; in other words, that they owned the "surplus" of the plan which had enabled the employer to increase the current employees' benefits. In holding that the employer did not exceed its powers under ERISA to amend the plan, the court described the same distinction under an ERISA defined benefit plan between "benefits" and "assets":

> A defined-benefit plan gives current and former employees property interests in their pension benefits but not in the assets held by the trust. (Citation omitted). If the investments appreciate, the plan need not devote that increase to improving benefits; it may retain the surplus as a cushion against the day when yields decrease, or the employer may cease making

contributions and allow the surplus to erode as
liabilities continue to increase.

1994 WL 92167 at *6.

We conclude, therefore, in light of the language of the
statute that §§ 1058 and 1344(d)(3) cannot be combined to provide
plan participants with a right to residual assets in the context
of a plan merger.  The district court correctly granted
appellees' motion to dismiss on this claim.


B.     Fiduciary Duty to Notify

Appellants next claim that RCA should have notified them
that they would not in the future be entitled to residual assets
if they withdrew their contributions from the RCA Pension Plan
prior to its merger with the GE plan.  However, the reporting and
disclosure provisions of ERISA, and regulations adopted pursuant
to these code sections, impose no requirement that a pension plan
sponsor notify beneficiaries of the possibility of forfeiture of
interest in residual assets resulting from the early withdrawal
of employee contributions.  See 29 U.S.C. §§ 1021–25.

Under ERISA, stringent fiduciary duties attach when an
employer acts directly as the pension plan administrator or makes
decisions directly affecting the administration of the plan.  See
29 U.S.C. §§ 1002 (21)(A), 1104.  However, employers take on
fiduciary obligations of the type alleged in appellants' second
claim only to the extent that they act as the actual plan
administrators:

Under ERISA, the roles of plan administrator and plan
sponsor are distinct.  The plan administrator owes a

11

fiduciary duty to the plan participants; the plan sponsor, as long as it is not acting as an administrator, generally does not.

Payonk v. HMW Indus., Inc., 883 F.2d 221, 231 (3d Cir. 1989) (Stapleton, J., concurring in the judgment).

Only plan administrators are required to disclose benefits information to beneficiaries, and such information typically involves an accounting of the plan's assets and liabilities and of the actual benefits accrued by individual beneficiaries rather than including notice of the existence of possible residual assets which might be recouped should the plan be terminated. See 29 U.S.C. §§ 1021-25. Thus, given that appellant Malia sought relief under a fiduciary duty not borne by GE, the district court correctly granted appellees' motion to dismiss on this claim.

C. Fiduciary Duty to Appoint Independent Manager

The district court found that under the circumstances of a pension plan merger as presented here, the only fiduciary duties borne by the appellees were the anti-dilution obligations imposed by § 1058. As the district court held that GE complied with the requirements of § 1058, it properly dismissed appellants' claim on this issue. Efforts by an employer to merge two pension plans do not invoke the fiduciary duty provisions of ERISA. Such duties do not attach to business decisions related to modification of the design of a pension plan, and in such circumstances the plan sponsor is free to act "as an employer and

not a fiduciary."  See Hlinka v. Bethlehem Steel Corp., 863 F.2d 279, 285 (3d Cir. 1983).


## V.

For all the reasons discussed above, we will affirm the opinion of the district court.