Georgia B. KOENIG, et al., on behalf of themselves and others similarly situated

v.

INTERCONTINENTAL LIFE CORP., et al.

Civ. A. No. 92–5768.

United States District Court, E.D. Pennsylvania.

March 16, 1995.

Aaron C.F. Finkbiner, III, Kathleen Milsark, Sheryl J. Cohen, Philadelphia, PA, for plaintiffs.

Susan Katz Hoffman, Andrew R. Rogoff, Brian T. Ortelere, Thomas J. Momjian, Philadelphia, PA, for defendants.

## MEMORANDUM AND ORDER

DITTER, District Judge.

This ERISA action arises out of a class action lawsuit brought by former employees of the Individual Insurance Products Division of CIGNA Corporation ("IIP"). The instant matter comes before me on defendants' motion for partial judgment on the pleadings on Counts I and VI of plaintiffs' amended complaint. For the reasons stated below, their motion is granted.

### I. FACTS

Defendant, Intercontinental Life Corporation ("ILCO"), purchased IIP from CIGNA in December, 1988. The IIP employees were entitled to benefits under CIGNA's pension plan. When CIGNA and ILCO negotiated the IIP purchase, they agreed that ILCO would continue the pension plan for IIP employees and that CIGNA would transfer assets from the CIGNA plan to a successor plan which ILCO would establish. ILCO had already established a pension plan for its employees in January, 1988.

Pursuant to the 1988 agreement of sale, ILCO assumed control of the IIP retirement plan and established the IIP Plan, a defined-benefit plan, for former IIP employees. CIGNA transferred more than $8.7 million to the IIP Plan. In January, 1990, ILCO merged the IIP Plan into the ILCO Plan.[1]

---

1. Plaintiffs challenged the purported merger, asserting that ILCO had amended the IIP Plan without providing proper notice. In an opinion dated March 15, 1995, I held that the merger was an amendment of the IIP Plan for which no notice had been given, in violation of 29 U.S.C. § 1054(h). Therefore, I held, plaintiffs' retire-

Plaintiffs allege that the value of their accrued benefits is $5 million. There is no allegation that ILCO holds insufficient funds with which to pay plaintiffs' benefits; indeed, plaintiffs assert the opposite. Most of the former IIP employees who had been employed by ILCO were terminated by the spring of 1992. Because they are no longer employed by ILCO and therefore can no longer accrue benefits, plaintiffs assert, they are entitled to the $3.7 million in surplus funds. Otherwise, they claim, ILCO will reap a $3.7 million windfall.

Count I of the amended complaint alleges that defendants have breached their fiduciary duty by operating the IIP and ILCO Plans for the benefit of ILCO and not for the exclusive benefit of the participants, in violation of 29 U.S.C. §§ 1103(c)(1) and 1104(a)(1). Count VI alleges that defendants have violated 29 U.S.C. § 1140 by terminating plaintiffs' employment with ILCO for the purpose of interfering with plaintiffs' right to benefit from the full $8.7 million transferred by CIGNA to the IIP Plan.

Defendants have moved for partial judgment on the pleadings on counts I and VI, claiming that as a matter of law, plaintiffs are not entitled to the surplus assets in a defined benefit pension plan.

## II. THE $3.7 MILLION IN SURPLUS ASSETS

### A. Plan Participants Not Entitled to Surplus Assets

■ There is no dispute that the $3.7 million in surplus assets are in the ILCO Plan. Plaintiffs' amended complaint alleges, "the ILCO Plan reaped a windfall in excess of $3,767,757" when ILCO terminated plaintiffs' employment with ILCO and "the ILCO Plan has retained the $3,767,757." (Compl., ¶¶ 64, 65). My opinion of March 15, 1995, does not alter the fact that the IIP Plan's funds were merged into the ILCO Plan; rather, it held only that the merger was ineffective to reduce plaintiffs' rate of future

benefit accrual. Thus, the surplus funds remain in the merged ILCO Plan, which is an ongoing plan.[2]

Defendants argue that recent Third Circuit caselaw holds that plan participants do not have a right to surplus assets in the context of a pension plan merger. *Malia v. General Electric Co.*, 23 F.3d 828, 833 (3d Cir.), *cert. denied*, — U.S. ——, 115 S.Ct. 377, 130 L.Ed.2d 328 (1994). *See also Johnson v. Georgia–Pacific Corp.*, 19 F.3d 1184, 1189 (7th Cir.1994). *Malia* involved the disposition of $1.3 billion in surplus assets that existed in one pension plan which had been merged into another. 23 F.3d at 829. Plaintiffs argued that they were entitled to a share of the surplus assets. The district court dismissed plaintiffs' claim for failure to state a claim. *Id.* at 830.

The Third Circuit affirmed, concluding that plan participants have no right to residual assets in the context of a plan merger. *Id.* at 833. The court distinguished "benefits" from "assets" and quoted the Seventh Circuit: "a defined-benefit plan gives current and former employees property interests in their pension benefits but not in the assets held by the trust." *Id.* at 832 (citing *Johnson*, 19 F.3d at 1189).

Plaintiffs argue that the instant case is distinguishable from *Malia* because the surplus in that case was an actuarial surplus derived from favorable investment experience. The instant surplus, plaintiffs argue, did not result from ILCO's superior investment prowess or actuarial experience. Rather, plaintiffs claim, ILCO forced CIGNA to transfer assets in excess of liabilities and thus created a surplus for ILCO with no effort on ILCO's part.

I am unconvinced by plaintiffs' argument and conclude that defendants' motion must be granted. While the actuarial surplus in *Malia* derived from superior asset management, there is no indication that the reasoning of the court of appeals applies only in

---

ment benefits must be calculated under the terms of the IIP Plan.

**2.** ERISA permits reversion of surplus to an employer upon a plan's final termination if certain conditions are met. *Borst v. Chevron*, 36 F.3d

1308, 1320 (5th Cir.1994) (referring to 29 U.S.C. § 1344(d)(1); *Malia v. General Electric Co.*, 23 F.3d 828, 831 (3d Cir.), *cert. denied*, — U.S. ——, 115 S.Ct. 377, 130 L.Ed.2d 328 (1994).

that context and not, as in this instance, to a surplus derived from superior negotiating performance or bargaining experience. CIGNA and ILCO negotiated the IIP sale, the terms of which included the transfer of $8.7 million from CIGNA to ILCO to fund the IIP Plan. As in *Malia*, all of plaintiffs' accrued benefits are fully funded and are protected under the merged plan. Denying plaintiffs the $3.7 million in no way diminishes the benefits to which plaintiffs are entitled as a result of their past employment. They are not, however, entitled to the surplus assets that inured to ILCO not by favorable actuarial or investment experience but instead from favorable bargaining during the sales negotiations with CIGNA—or even, as plaintiffs allege, from terminating plaintiffs' employment for the purpose of obtaining the $3.7 million surplus.

■ This allegation is contained in count VI of plaintiffs' amended complaint. It alleges that defendants terminated plaintiffs' employment with ILCO in order to prevent plaintiffs from attaining their "right to benefit from the full amount transferred from the CIGNA Plan to the IIP Plan." (Compl. ¶ 111). Plaintiffs assert that defendants thus violated Section 510 of ERISA, which provides that it is unlawful for any person to discharge or discriminate against a participant for the purpose of interfering with the attainment of any right *to which the participant is entitled* or *may become entitled* under an employee benefit plan. 29 U.S.C. § 1140 (emphasis added). The short answer to plaintiffs' assertion is that § 1140 refers to vested rights, not to those rights that might become vested by future events. Harsh as this result may be, the fact is that plaintiffs had no guarantee of continued employment with ILCO. They could be terminated for any cause or no cause without remedy. They could be terminated, with the result that they were deprived of the opportunity to accrue more benefits through additional years of service, and still have no remedy. Because plaintiffs are not entitled under ERISA to a share of the surplus assets, it follows that their termination did not interfere with the attainment of any "right" to the surplus, and defendants' motion for judgment on the pleadings of count VI must therefore be granted.

## B.  ERISA's "Exclusive Benefits" Clause

■ Plaintiffs allege that defendants violated ERISA's "exclusive benefits" clause, 29 U.S.C. §§ 1103(c)(1) and 1104(a)(1)(A), by accumulating the $3.7 million surplus assets for ILCO's own benefit rather than holding them "exclusively for the purpose of providing benefits to plan participants and their beneficiaries." (Compl. ¶ 53). *Malia* did not address these specific ERISA provisions or discuss whether they prohibited reversion of surplus assets to an employer.

The Third Circuit had previously addressed the issue, however, in *Chait v. Bernstein*, which involved a partial termination of a benefit plan. 835 F.2d 1017, 1020, 1023 (3d Cir.1987). While the ILCO Plan in this case is ongoing and has not partially terminated, *Chait* is instructive nonetheless. The court pointed out that the "exclusive benefits" clause is standard language appearing in every ERISA plan pursuant to ERISA section 403(c)(1), 29 U.S.C. § 1103(c)(1). *Id.* at 1023. The Third Circuit held that a plan's "exclusive benefit" language standing alone cannot be read as prohibiting reversion of plan surplus to the employer. *Id.*  *See also, Borst v. Chevron*, 36 F.3d 1308, 1316–17 (5th Cir. 1994) (neither ERISA nor Internal Revenue Code requires distribution of surplus assets upon partial termination of a plan; employees' rights to portion of surplus assets must rest on some provision of plan itself). Plaintiffs have not alleged any additional provision of the IIP or ILCO Plans that would prohibit ILCO's retention of the surplus assets. As a matter of law, defendants have not breached their fiduciary duty to plaintiffs by retaining the surplus and defendants' motion for judgment on the pleadings of count I must be granted.

## III.  CONCLUSION

Under prevailing caselaw, plaintiffs are not entitled to the $3.7 million surplus assets in the ILCO Plan. Defendants' termination of plaintiffs' employment with ILCO did not, therefore, interfere with plaintiffs' attainment of the surplus and defendants' motion

for partial judgment on the pleadings of count VI must therefore be granted. Because ERISA's "exclusive benefits" clause, without more, does not prohibit reversion of a plan surplus to an employer, defendants did not breach their fiduciary duty to plaintiffs by retaining the surplus within the ILCO Plan. Defendants' motion for judgment on the pleadings of count I must therefore be granted.