**Leonard GILLIS and Valdo Sargeni, on behalf of themselves and all others similarly situated**

v.

**HOECHST CELANESE CORPORATION and Hoechst Celanese Retirement Plan.**

**Civ. A. No. 90–5542.**

United States District Court, E.D. Pennsylvania.

June 26, 1995.

204

Kent Cprek, Philadelphia, PA, for plaintiffs.

1. Hoechst Celanese actually sold the PVC division to the venture capital group MX Holdings, Inc., who took the name American Mirrex.

2. 29 U.S.C. § 1058 provides in part that:
A pension plan may not ... transfer its assets or liabilities to, any other plan ... unless each participant in the plan would (if the plan then terminated) receive a benefit immediately after the ... transfer ... which is equal to or greater than the benefit he would have been entitled to receive immediately before the ... transfer (if the plan then had terminated).

Laurence Z. Shiekman, Brian T. Ortelere, Philadelphia, PA, for defendants.

### MEMORANDUM AND ORDER

DITTER, District Judge.

*A. Introduction*

In August of 1989, Hoechst Celanese Corporation sold its Delaware City PVC division to the American Mirrex Corporation.[1] Plaintiffs, Leonard Gillis and Valdo Sargeni, worked for Hoechst at the Delaware City plant. The sale to American Mirrex terminated their employment with Hoechst. Even though they became American Mirrex employees, they now contend on their own behalf, and on behalf of other former Hoechst employees, that they lost various employment benefits as a result of the sale.

Plaintiffs filed an eight count complaint and now move for summary judgment on counts I, II, and III. Count I alleges that defendants failed to issue summary plan descriptions, summary plan annual reports, and summary change descriptions consistent with ERISA. 29 U.S.C. §§ 1021–1023. Count II alleges that defendants failed to produce documents upon specific written request as they were required to do under ERISA. 29 U.S.C. §§ 1001–1371. Count III alleges that defendants transferred insufficient funds to the American Mirrex Retirement Plan to fund plaintiffs' early retirement benefits. 29 U.S.C. § 1058.

*B. Count III: Underfunding Early Retirement Benefits*

▮ Although defendants were permitted to transfer their liability for early retirement benefits to the American Mirrex Retirement Plan,[2] they needed to transfer sufficient assets to fund those benefits.[3] In count

Section 414(*l*) of the Internal Revenue Code, 26 U.S.C. § 414(*l*), mirrors 29 U.S.C. § 1058 and provides that a plan is not "qualified" unless these same requirements are met.

3. It is undisputed that defendants transferred $2,240,747. Plaintiffs argue, however, that calculations based on 29 C.F.R. Part 2619 indicate that defendants needed to transfer $3,481,150 in order to fund the early retirement benefits properly, thus leaving a $1,240,393 shortfall. While defendants do not challenge these figures, and I accept them as true for purposes of this memo-

III, the parties' dispute centers around the sufficiency of defendants' transfer. Specifically, plaintiffs challenge the actuarial assumptions that defendants relied upon in conducting the required "termination basis" calculation. Plaintiffs argue that defendants were required to rely on the Pension Benefit Guaranty Corporation's actuarial assumptions codified at 29 C.F.R. § 2619.[4] Defendants argue that although the PBGC's assumptions provide an effective "safe harbor," their reliance on "reasonable actuarial assumptions" was also permissible. Thus, the issue is whether defendants were required to use the PBGC assumptions or whether they were allowed to rely upon "reasonable actuarial assumptions."

This issue raises two independent questions. Were defendants required to use the PBGC's actuarial assumptions in their valuation of the transferred assets? If so, then summary judgment is properly granted for plaintiffs because defendants concede that they did *not* use the PBGC assumptions. If not, and defendants were entitled to rely on "reasonable actuarial assumptions," I must consider whether defendants have proffered sufficient evidence to preclude summary judgment.[5]

■ Plaintiffs' position that "the termination basis calculation must follow 29 C.F.R. § 2619" is incorrect. The propriety of the purported transfer is controlled by 29 U.S.C. § 1058. *See Gillis,* 4 F.3d at 1147, 1149. Section 1058 of Title 29 is parallel to section 414(*l*) of the Internal Revenue Code. 26 U.S.C. § 414(*l*). As noted by the Third Circuit, interpretation of ERISA's provisions is guided by sources which interpret IRC coun-

terpart provisions. *Gillis,* 4 F.3d at 1144. Thus, sources that interpret IRC section 414(*l*) are useful in understanding 29 U.S.C. § 1058. *See id.* at 1150 (Alito, J. concurring); *Malia v. General Elec. Co.,* 23 F.3d 828, 830 (3d Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 377, 130 L.Ed.2d 328 (1994) (relying on treasury regulations in interpreting 29 U.S.C. § 1058). The Secretary of the Treasury has promulgated regulations interpreting section 414(*l*) which are codified at 26 C.F.R. § 1.414(*l*)–1(b)(5). Those regulations provide that:

> (5) *Benefits on a termination basis.*
>
> (ii) For purposes of determining the benefits on a termination basis, the allocation of assets to various priority categories under section 4044 of ERISA must be made on the basis of reasonable actuarial assumptions. *The assumptions used by the Pension Benefit Guaranty Corporation as of the date of the merger or spinoff are deemed reasonable for this purpose.*

26 C.F.R. § 1.414(*l*)–1(b)(5)(ii) (1994) (emphasis added).

It is clear from the regulation that the PBGC actuarial assumptions merely provide a "safe harbor"—i.e., a calculation method that is *per se* reasonable. However, any "reasonable actuarial assumptions" that underlie a "termination basis" calculation will satisfy IRC section 414(*l*) and, by analogy, also satisfy 29 U.S.C. § 1058.

■ I conclude that defendants need not have used the PBGC assumptions in their asset calculations. ERISA and the IRC are satisfied if defendant used "reasonable actuarial assumptions." Defendants have pre-

---

randum, they are of no consequence if the PBGC assumptions are inapplicable.

**4.** Congress established the PBGC in the ERISA subchapter dealing with plan termination insurance. 29 U.S.C. § 1302. The PBGC, the IRS, and the Department of Labor are the three administrative agencies responsible for enforcing and interpreting ERISA. *Blessitt v. Retirement Plan for Employees of Dixie Eng.,* 848 F.2d 1164, 1167 (11th Cir.1988). Although the PBGC's regulations are extremely helpful in interpreting questions arising under subchapter III of ERISA, they are less so with respect to other ERISA subchapters. Hence, when the Third Circuit has interpreted section 1058 (which is not a part of

subsection III) in the past, it has referenced the IRS, not PBGC regulations. *See e.g., Gillis v. Hoechst Celanese Corp.,* 4 F.3d 1137, 1147 (3d Cir.1993) (citing cases).

**5.** Defendants also separately argue that plaintiffs are judicially estopped from challenging the actuarial method used by defendants because plaintiffs' attorney, during the course of depositions, seemed to acknowledge the validity of defendants' assumptions. I am not persuaded by this argument and do not believe that plaintiffs are judicially estopped from challenging defendants' actuarial assumptions.

sented substantial evidence in the form of expert affidavits and deposition testimony showing that their calculations were reasonable. I find that this evidence raises a genuine issue as to the material fact of whether defendants' calculations were reasonable and summary judgment on count III is therefore inappropriate.

### C. Counts I & II: Reporting and Disclosure Violations

In counts I and II of the complaint, plaintiffs allege that defendants failed to satisfy ERISA's reporting and disclosure requirements. 29 U.S.C. §§ 1021–1024(b)(4). They seek an injunction ordering the defendants to produce various plan materials and conforming plan documents. They also seek imposition of the statutory penalty in the amount of $100 per day. *See* 29 U.S.C. § 1132(c)(1).

■ ERISA imposes certain substantive requirements. For instance, the plan administrator must, upon written request of any participant, furnish the participant with a copy of certain plan documents. 29 U.S.C. § 1024(b)(4). In addition, the plan administrator must periodically submit documents that contain plan information to both the government and the plan participants. 29 U.S.C. §§ 1021–1024. If a plan administrator fails to comply with any of these requirements, a plan *participant* can seek injunctive and monetary relief under 29 U.S.C. §§ 1132(a)(1), 1132(c)(1) (discretionary $100 per day penalty for failure to report requested documents).[6] Defendants argue that plaintiffs are not participants within the meaning of section 1132 and, therefore, they may not pursue the disclosure and reporting claims.

ERISA defines a "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer." 29 U.S.C. § 1002(7). The Supreme Court has explained that a former employee is a "participant" under ERISA if he has a "colorable claim" to vested benefits. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S.

101, 117, 109 S.Ct. 948, 957–58, 103 L.Ed.2d 80 (1989). In *Firestone,* the Court went on to note that in order to establish that he may become eligible for benefits, a claimant must have *a colorable claim that he will prevail in a suit for benefits. Id.* Plaintiffs argue that count III of their complaint—involving early retirement benefits—is a colorable claim to vested *benefits* which makes them "participants." Defendants contend that count III of plaintiffs' complaint is not a "claim for benefits," as is required to attain "participant" status, but is instead a claim for the *transfer of assets.*

Although defendants are correct—a claim for assets is distinct from a claim for benefits—their conclusion is flawed. If plaintiffs prevail on count III, defendants' purported transfer of liability would not have been valid under 29 U.S.C. § 1058. If the transfer was not valid, then defendants are still liable to plaintiffs for their outstanding early retirement *benefits.* Thus, count III, while on its face challenging the sufficiency of an asset transfer, actually involves a claim for benefits. This claim is colorable in light of the Third Circuit's opinion in *Gillis v. Hoechst Celanese,* 4 F.3d at 1147, which explicitly recognized that early retirement benefits must be considered when evaluating the sufficiency of an asset transfer on a termination basis. Thus, count III is a colorable claim for benefits which means that plaintiffs are "participants" within the meaning of 29 U.S.C. § 1132.

■ Plaintiffs have standing to pursue their reporting claims—i.e., as participants, they were entitled in 1990 to the plan documents that they requested and may now, under section 1132, seek civil enforcement for any Hoechst Celanese failure to produce section 1024(b)(4) documents. To the extent that defendants have not already complied with plaintiffs 29 U.S.C. § 1024(b)(4) document requests, they now will be required to do so. I conclude, however, that it is premature to impose the discretionary statutory penalty on defendants for the reporting violations. Defendants have admitted that they

---

**6.** A plan beneficiary can also seek civil enforcement of ERISA's provisions. However, in the instant case, plaintiffs do not claim to be beneficiaries.

were three months late in disclosing certain requested documents.[7] It is unclear, however, exactly what caused this delay and whether defendants were otherwise cooperative with other ERISA disclosure requirements. I will direct the parties to submit whatever documents or exhibits they believe to be appropriate to provide a basis for a future ruling on defendants' liability for the statutory penalty.

■ I turn now to the alleged disclosure violations—i.e., plaintiffs' claim that certain Hoechst Celanese Plan documents do not conform with ERISA's disclosure requirements. Plaintiffs seek to compel Hoechst Celanese to produce new plan documents that correct alleged deficiencies.[8] Plaintiffs are no longer Hoechst employees and once the early retirement asset transfer issue is resolved, they will have no relationship with Hoechst. Therefore, the information that Hoechst discloses to its employees and plan participants is of no concern to plaintiffs. Under these circumstances, plaintiffs may not require defendants to amend existing Hoechst Celanese Plan documents. I will therefore deny plaintiffs' request for injunctive relief to modify any existing Hoechst Celanese Plan documents.[9] An appropriate order follows.

## ORDER

AND NOW, this 26th day of June, 1995, it is hereby ordered that:

1. plaintiffs' motion for summary judgment on count III is denied;

2. plaintiffs' motion for summary judgment on counts I and II is granted and judgment is entered for plaintiffs and against defendants on these counts;

3. to the extent that they have not already done so, defendants will give plaintiffs the requested section 1024(b)(4) documents;

4. the parties shall submit within 20 days of this order their stipulations, additional evidence, and briefs concerning the impositions of the statutory penalty that may be imposed under the provisions of 29 U.S.C. § 1132(c)(1);

5. on July 6, 1995, I will meet with the parties in my chambers to discuss settlement and set a final date for trial if necessary. Each party shall have a representative capable of authorizing settlement available.

---

7. Plaintiffs' original request for plan documents came by a letter dated June 6, 1990. Defendants disclosed a majority of these documents on October 5, 1990—roughly four months after the request. ERISA provides that a plan administrator must comply with requests for documents within thirty days from when the request is made (unless a delay results from matters reasonably beyond the administrator's control). 29 U.S.C. § 1132(c)(1). Thus, the documents provided on June 6, 1990, were three months late.

The June 6, 1990, disclosure did not contain the requested copy of the Form 5500 because that document was still being drafted at the time that the request was made. Although it appears that defendants have since disclosed the Form 5500 to plaintiffs, it is unclear exactly why that disclosure was delayed after defendants had finished drafting the document.

8. Plaintiffs allege that after the American Hoechst Corporation merged with the Celanese Corporation to form Hoechst Celanese in 1988, the company "purposely shifted [the tone of its employee benefits booklets] to an upbeat format rather than providing the balanced statement of rights and duties, identifying information and disclosure of legal rights." Plaintiffs specifically complain that the documents are deficient in that they fail to give the formal name and address of the plan sponsor and plan administrator; the tax identification number of the plan sponsor and the plan; a statement of ERISA rights and anti-retaliation laws; information about which employees are eligible for which benefits; the conditions necessary to lose benefits; and, addresses to file claims and appeals.

9. I make no finding as to whether the plan documents actually violated ERISA's disclosure requirements.