BECKER, Circuit Judge,
concurring in part and dissenting in part.
I join in the majority’s opinion and in the judgment except insofar as they affirm the order dismissing the claims against Atul Chowdhry. In my view, if we read the complaint with the generosity required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, under which “all facts alleged in the complaint and all reasonable inferences that can be drawn from them must be accepted as true,” Malia v. Gen. Elec. Co., 23 F.3d 828, 830 (3d Cir.1994), a picture emerges of Chowdhry as the mastermind of a complex scheme to defraud his investors. I believe that, even under the heightened pleading standards of Rule 9(b) and of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b) (“PSLRA”), the complaint sufficiently alleges misbehavior and scienter on Chowdhry’s part.
First of all, the complaint describes Chowdhry’s actions in some detail. Thus, according to the plaintiffs, Chowdhry prepared documents with Rosenberg in February 2000 that “represented that Collective’s outstanding liabilities were approximately $250,000,” and “that Collective had full proprietary rights to the communications systems being marketed.” (¶ 24) He “orally represented [to Klein] at that time that Collective owned and had full proprietary rights to the system.” (1125) He approved June 2000 documents, intended for investors, that represented that Collective had “full proprietary rights to the entire system.” (¶ 28) (Despite the majority’s conclusion, see ante at -, I do not view this representation as consistent with a mere licensee interest.) He reviewed and approved November 2000 offering documents that misrepresented Collective’s interest in its system and “projected the existing and future liabilities of Collective without disclosing the true TATA relationship and liability.” (¶ 39) He used search firms to hire employees, incurred search fees, and then fired the employees quickly; he also failed to disclose this wasteful practice and the fee liabilities that it created. (¶ 33B)
The complaint also alleges that Chowdhry’s statements to investors were false, and that he knew them to be false. “The stated $250,000 liabilities were understated by hundreds of thousands of dollars of undisclosed liabilities.” (¶ 33A) “Chowdhry and Collective did not own the entire system”; instead, the billing and collection system was licensed from TATA, Collective had no “proprietary rights” to that system, and “Collective owed TATA more than $600,000 — an additional liability that had not been disclosed — for the work performed by TATA. These amounts had not been paid and no further work was going to be done on the system to enable Collec *280 tive to have a fully operational billing system and a staff trained to use it until said liability was paid.” (¶ 33C; see also 1144(a))
The complaint further alleges that Chowdhry used Collective and its associated corporations as a vehicle for embezzlement, and that funds invested in the companies were funneled to Chowdhry and his family. “Autek was used by Chowdhry as a funnel to drain money out of Collective for himself and his wife, defendant Sunita, and his cousin Neil.” (1Í33A) He and the other defendants “intended to divert significant amounts of the invested monies ... to pay Chowdhry and his family, rather than pay TATA’s bill and improve the system.” (¶ 33D) “Autek had been dissolved ... and was only being used by Chowdhry to take money out of Collective.” (¶ 36) “Autek was used ... as a cover to funnel money to Chowdhry.” (¶ 44(b)) Chowdry “never intended to permit any of the investors to become shareholders of Collective and to that end, never caused the issuance of any shares of Collective or Wireless stock to those who became investors---- Instead, defendant Chowdhry claimed at all times that he owned Collective and its products!.]” (¶ 44(c)) Chowdhry hired Collective employees who “were in fact working on other projects designed to benefit Chowdhry and his family interests.” (¶ 44(d))
In my view these allegations are sufficient to satisfy Rule 9(b) and the PSLRA. The complaint lists documents with reasonable specificity, explains what those documents said, and avers that those statements were false. Chowdhry cannot reasonably claim that he is unable to defend himself simply because he doesn’t know “whether the Defendants represented Collective’s liabilities as of a particular date ..., or whether the representations were describing Collective’s gross or adjusted liabilities----” Ante at —. Nor does the complaint’s use of the term “full proprietary rights” somehow fail to inform Chowdhry that he stands accused of misrepresenting Collective’s interest in the TATA system in certain specific documents and oral presentations. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir.1997) (“Rule 9(b)’s heightened pleading standard gives defendants notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits brought solely to extract settlements.” (citations omitted)). Similarly, the other purposes of Rule 9(b) and the PSLRA, deterring frivolous suits and protecting defendants’ reputations, do not seem to me to demand that we reject this complaint. The allegations here are not general averments of fraud, but tolerably specific factual claims about misstatements that, if proven, would violate the securities laws and entitle plaintiffs to damages.
I also do not share the majority’s dissatisfaction with the complaint’s dates. The complaint refers to various undated documents and oral representations from 1999 and 2000. But it specifies the dates on which those documents were delivered as closely as was possible given the limited information available to the plaintiffs years after the fact — generally, by month and year, but not by day. To hold that the complaint in this case fails because plaintiffs cannot specify the precise date of undated, informal documents delivered to them years ago creates an excessively high barrier to any plaintiff who wants to bring a securities fraud suit based on misrepresentations not contained in formal public statements. In cases like this one, I simply do not think that the language of Rule 9(b) or the PSLRA requires all of the detail that the majority demands. We have held as much in the past:
*281 Rule 9(b) requires plaintiffs to plead with particularity the “circumstances” of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior. It is certainly true that allegations of “date, place or time” fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.
Seville Indus. Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786, 791 (3d Cir.1984) (emphasis added).
Similarly, while the majority is correct that EP Medsystems, Inc. v. EchoCath, Inc., 235 F.3d 865 (3d Cir.2000), is factually distinguishable, I think that it is too quick to distinguish that case. In EP Medsystems, a panel of this Court approved a relaxed pleading standard under the PSLRA because the plaintiff had invested “on the basis of personal representations by [defendant] executives to [plaintiff] officers,” and the complaint was “not ... a class action brought by shareholders with an insignificant interest in the company; it is an individual action, based on a transaction arising from direct negotiations between the parties to the action.” Id. at 881. All of the quoted statements are just as true of this case. And the EP Medsystems panel concluded: “It is difficult to see how MedSystems could have pled fraud or scienter with more specificity without having been given the opportunity to conduct any discovery.” Id. at 882.
This case is a great deal closer to EP Medsystems than it is to the typical securities cases cited by the majority. In the typical case, plaintiffs rely on allegedly misleading public statements, SEC filings, or formal offering documents. See, e.g., In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1416 (press releases and SEC filings); In re Rockefeller Ctr. Props., Inc. Sec. Litig., 184 F.3d 280, 284 (3d Cir.1999) (proxy statement); GSC Partners CDO Fund v. Washington, 368 F.3d 228, 235 (3d Cir.2004) (offering circular). Such statements are easy to date and describe in detail. In contrast, the informal and undated documents involved here make such specificity harder, and the more lenient standard of EP Medsystems seems more appropriate.
I also believe that the complaint adequately alleges that Chowdhry operated with the requisite state of mind. The complaint says:
Chowdhry had opportunity and motive as well as actual knowledge. He wished to receive and did receive the monies invested. He also knew the truth. He had the actual facts documented and thus knew that the oral statements and writings given to the plaintiffs were untrue and not in accord with the actual facts.
¶ 45(a). This statement, combined with the factual allegations set forth above, is more than sufficient to meet the scienter pleading requirements of § 78u-4(b)(2).
The majority appears to misunderstand the allegations against Chowdhry. The Court writes: “Indeed, to the extent that the Plaintiffs allege that Chowdhry was motivated by a desire to obtain capital from the securities investment to cover corporate expenses or debt, a motive so generic that almost every corporate officer in Chowdhry’s position would possess [it], the Plaintiffs’ argument must fail as a matter of law.” Ante at -. This is quite true, but it is impossible to read the complaint as alleging any such thing. The complaint may hint that Chowdhry wanted money “to cover corporate expenses or debt,” but its focus is elsewhere. It re *282 peats over and over again that Chowdhry would “draw monies from Collective for his personal benefit” (¶ 33A), that he and other defendants “intended to divert significant amounts of the invested monies ... to pay Chowdhry and his family” (¶ 33D), that he was using Autek “only ... to take money out of Collective” (¶ 36), and that Collective employees were “working on other projects designed to benefit Chowdhry and his family interests” instead of working for the benefit of Collective (¶ 44(d)).
In short, the gravamen of this complaint is not a generic allegation that a corporate executive puffed his company’s prospects in order to secure his job and enhance the value of his stock options. Chowdhry is not accused of stretching the truth in order to strengthen his company. He is being accused of lying and stealing to line his own pocket at the expense of his company. The principles cited by the majority are simply irrelevant to these accusations. If we believe the facts pled in the complaint, they clearly “giv[e] rise to a strong inference that [Chowdhry] acted with the requisite state of mind,” 15 U.S.C. § 78u-4(b)(2), and the scienter pleading requirements have therefore been met.
I certainly do not suggest that the plaintiffs here would be likely to win their suit; they may not even survive summary judgment. But I believe that summary judgment is the proper place to test the factual sufficiency of plaintiffs’ allegations. To my mind, their pleadings are sufficient to meet the Rule 9(b) and PSLRA requirements as to Atul Chowdhry, and I would reverse the District Court’s order dismissing the suit against him. I therefore respectfully dissent.