Ronald J. DRANCHAK, Plaintiff–
Appellant,

v.

AKZO NOBEL INC., Defendant–Appellee.

Nos. 95–3116, 95–3561.

United States Court of Appeals,
Seventh Circuit.

Argued March 29, 1996.

Decided July 3, 1996.

Rehearing and Suggestion for Rehearing
En Banc Denied July 29, 1996.

**458**

Shayle P. Fox (argued), Lawrence M. Cohen, Fox & Grove, Chicago, IL, for Plaintiff–Appellant in No. 95–3116.

Paul E. Starkman, Arnstein & Lehr, Chicago, IL, P. Kevin Castel (argued), Cahill, Gordon & Reindel, New York City, for Defendant–Appellee in No. 95–3116.

Shayle P. Fox (argued), Lawrence M. Cohen, Martin K. Denis, Michael A. Paull, Fox & Grove, Chicago, IL, for Plaintiff–Appellant in No. 95–3561.

Paul E. Starkman, Arnstein & Lehr, Chicago, IL, P. Kevin Castel (argued), Patricia Farren, Cahill, Gordon & Reindel, New York City, for Defendant–Appellee in No. 95–3561.

Before EASTERBROOK, ROVNER, and DIANE P. WOOD, Circuit Judges.

EASTERBROOK, Circuit Judge.

Between April 1991 and January 1992 Ronald Dranchak was Vice President for Human Resources of Akzo America Inc. (since renamed Akzo Nobel Inc.). John Jadel, the President of Akzo America, hired Dranchak from a similar position at a subsidiary, Akzo Chemicals, where Dranchak had been since May 1988. Dranchak was not the only man on the move. Akzo America's parent corporation, Akzo N.V. (now called Akzo Nobel N.V.), decided it had no use for Jadel's services and in September 1991 told Richard Clarke, the CEO of Akzo America, to let Jadel go. Clarke asked Dranchak, whose portfolio this was, to negotiate Jadel's severance package. Dranchak proposed a generous one; Clarke and the board of directors approved. Dranchak did not tell Clarke that, after learning that he was to be sacked, Jadel had approved an even more generous severance and retirement benefits package for Dranchak—as Dranchak had implored his benefactor to do before he left. When the board learned of this, Dranchak followed Jadel out the door. Mutual back-scratching at the expense of the corporate treasury does not sit well at Akzo. Dranchak sued to collect on the promises Jadel had made, adding several age discrimination theories for good measure. A jury awarded Dranchak almost $3 million. But the judge set aside the verdict for several reasons: trial error, lack of evidence, and preemption of any claims based on state law. Ruling on an ERISA claim that had been tried to the court, the judge held that Jadel lacked either actual or apparent authority to approve Dranchak's benefits package, and that Dranchak had been fired for his deceit.

■ Dranchak does not contend that the district judge erred in the conduct of the portion of the case tried to the bench, and he does not contend that any of the court's findings is clearly erroneous. Nonetheless, he insists, the jury's findings should have prevailed over the court's, which if so would entitle him to at least some relief. Following a logical implication of *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), and *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), we have held that when some

claims are tried to the court and others to a jury, the judge must accept the jury's findings on any issues common to the claims—for example, whether Jadel had authority to make the promises. See *Melendez v. Illinois Bell Telephone Co.,* 79 F.3d 661, 669–70 (7th Cir.1996); *McKnight v. General Motors Corp.,* 908 F.2d 104, 113 (7th Cir.1990); *Williamson v. Handy Button Machine Co.,* 817 F.2d 1290, 1293–94 (7th Cir.1987). Problem: the jury's verdict was annulled. Does a verdict that has been set aside have any effect on issues tried to the court? *Artis v. Hitachi Zosen Clearing, Inc.,* 967 F.2d 1132, 1138 (7th Cir.1992), says that "a judge should continue to be bound by a jury's findings even if its verdict is vacated, so long as the underlying factfinding is not impugned." No case that we could find holds that the jury's findings prevail even when the reason for vacating the verdict calls the accuracy of the findings into question. The reasons that justify annulling the verdict may, and here, do, show why the ex-verdict should not govern claims that have been tried to the court. The district judge set aside the jury's verdict in this case not only because he believed that the state-law claims are preempted—a rationale that does not impugn its factual accuracy—but also because he thought that several events during the trial, and omission from the jury instructions of two of Akzo's defenses, made the verdict unreliable. Dranchak's arguments to the contrary are not persuasive. The jury's verdict therefore has *no* implications for the court's analysis of the ERISA claims.

■ Having set aside the verdict in Dranchak's favor on the contract claims, should the judge have held another trial? He thought not, and rightly, because the whole state-law theory is preempted. Jadel signed three letters promising Dranchak extra pension credits, unreduced payments in the event of early retirement (or discharge), the continuation of health benefits under the firm's welfare plan, and similar emoluments. Dranchak wants to enforce these promises as contracts under state law. His problem is § 514(a) of ERISA (the Employee Retirement and Income Security Act), 29 U.S.C. § 1144(a), which preempts "any and all State laws insofar as they may now or hereafter

relate to any employee benefit plan" within the scope of ERISA. Not only pension and welfare plans, but also contracts specifying levels of pension and welfare benefits, fall into the domain of federal law—for the plans themselves are just contracts. See *Lockheed Corp. v. Spink,* —— U.S. ——, —— – ——, 116 S.Ct. 1783, —— – ——, 135 L.Ed.2d 153 (1996); *Curtiss–Wright Corp. v. Schoonejongen,* —— U.S. ——, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995); *Johnson v. Georgia–Pacific Corp.,* 19 F.3d 1184 (7th Cir.1994). Dranchak does not quarrel with this principle but insists that the letter agreements do not affect Akzo's plans. ERISA does not regulate executives' pay and bonuses, and it is possible to draft severance agreements that are unrelated to a "plan" and therefore fall outside ERISA's scope. *Nagy v. Riblet Products Corp.,* 79 F.3d 572, 574 (7th Cir. 1996). Dranchak observes that the letter agreements do not set any plan's level of benefits or rules for payment; they simply afford him extra years of pension credit and extended medical coverage. It is as if Jadel said to the pension plan's administrator: "Calculate what Dranchak is due under the terms of the plan, then pay him twice that amount." But this is precisely why the letter agreements are covered by ERISA rather than state law. See *Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290, 1296 (5th Cir.1989). They instruct the plan's administrator how much to disburse to Dranchak from the pension and welfare trusts.

■ Rules governing payment to participants from pension and welfare plans necessarily "relate to" those plans. *Bartholet v. Reishauer A.G. (Zurich),* 953 F.2d 1073, 1076–77 (7th Cir.1992); *Lister v. Stark,* 890 F.2d 941 (7th Cir.1989). Portions of the letter agreements that promise the continuation of wages, favorable recommendations, and so on, cannot sensibly be divorced from the portions that deal with pension and welfare benefits; if one portion is valid (because Jadel had the necessary authority), everything is valid. The letter agreements affect ERISA plans, state law enforcing the letter agreements would relate to the plans, and the promises they contain therefore must

stand or fall together under federal common law.

Thus we arrive at the various claims under the Age Discrimination in Employment Act. The jury's verdict on one of these claims was set aside under Fed.R.Civ.P. 50(b)(1)(C) on the ground that the evidence did not permit a reasonable jury to find in Dranchak's favor; one other was removed from the jury on legal grounds; on a final claim the jury could not reach a verdict, and the judge concluded that the evidence was too thin to require a second trial. We start with Dranchak's first ADEA theory, on which the judge overruled the jury: that he was fired for "opposition conduct," in violation of the ADEA's anti-retaliation rule. 29 U.S.C. § 623(d).

■ Dranchak believes that he was fired not only because of his own age (a subject to which we return) but also because he vocally opposed discrimination at Akzo. First, in his role as head of human relations, he toured Akzo's facilities instructing other managers not to violate the ADEA and prepared documents warning against age discrimination; second, in his role as employee, he opposed discrimination against himself by obtaining the letter agreements, which gave him financial security in the event of discharge. To fire him on account of the promises Jadel made, Dranchak believes, was to fire him on account of his efforts to oppose age discrimination. This argument turns a breach of fiduciary duty (by both Jadel and Dranchak) into immunity from discharge, a step that the ADEA does not countenance. Employees are free to oppose age discrimination against themselves and others, but if they decide to do so by violating corporate rules or requirements unrelated to age they may be penalized. *Visser v. Packer Engineering Associates, Inc.*, 924 F.2d 655 (7th Cir.1991) (en banc). As for Dranchak's more general argument that he was sacked for counseling other managers not to discriminate: of this, there is not a whiff of evidence. Firms employ directors of human resources in large measure to reduce their legal exposure by spreading awareness of the laws governing employment. Dranchak did this at both Akzo Chemical and Akzo America,

receiving praise, raises, and promotion—until he decided to feather his own nest.

■ The second ADEA claim is that Akzo retaliated for Dranchak's formal charge of age discrimination (which he made as soon as it became clear that the skids had been greased for his removal) by refusing to write favorable letters of recommendation to assist his search for another job. One of Jadel's promises on behalf of Akzo had been to write glowing letters at Dranchak's request. Now why any reputable employer would make such a promise is a puzzle; the promisor cannot know at the time what the ultimate grounds for discharge will be, and a recommendation written without regard to these grounds may defraud its recipient. Akzo argued that it could not make a favorable recommendation in light of the reason for Dranchak's exit, and that this (coupled with the invalidity of Jadel's promises) rather than any retaliatory motive explained its conduct. The district court ruled in Akzo's favor for a different reason, however: that the anti-retaliation rule applies only to "employees or applicants for employment", 29 U.S.C. § 623(d), excluding former employees such as Dranchak.

*Koelsch v. Beltone Electronics Corp.*, 46 F.3d 705, 709 (7th Cir.1995), appears to draw a bright line between employees and former employees for purposes of 42 U.S.C. § 2000e–3(a), a provision in the Civil Rights Act of 1964 materially identical to § 623(d). One court of appeals so understood this circuit's law in *Robinson v. Shell Oil Co.*, 70 F.3d 325, 331 & n. 2 (4th Cir.1995) (en banc), cert. granted, ⸺ U.S. ⸺, 116 S.Ct. 1541, 134 L.Ed.2d 645 (1996), citing *Reed v. Shepard*, 939 F.2d 484 (7th Cir.1991). Yet *Reed* says that a former worker loses "employee" status for purposes of § 2000e–3(a), and thus § 623(d), only when the retaliation is unrelated to the employment. 939 F.2d at 493. Because the Supreme Court has granted certiorari in *Robinson*, we need not replow this ground. Even if the Court eventually decides that former employees may remain statutory "employees," as another panel held in *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881 (7th Cir.1996), Dranchak could not prevail. The record does not establish retalia-

tion for filing a charge of discrimination or threatening to file a charge. What Dranchak wants to call retaliatory defamation was, the district judge held in the ERISA portion of the case, the unpleasant truth. Dranchak and Jadel connived to enrich themselves at Akzo's expense. Indeed, the district court found that Dranchak not only violated his fiduciary duties to Akzo but also had obtained his job with Akzo Chemicals by lying about his career. Akzo did not have any contractual obligation to depict Dranchak favorably, and § 623(d) does not require Akzo to perpetuate the deceitful employment history that Dranchak had constructed for himself.

■ One final claim requires attention. Dranchak believes that the discharge was itself motivated by his age. After the jury was unable to reach a verdict on this question, the judge concluded that the evidence is insufficient to support decision in Dranchak's favor, obviating the need for a second trial. Fed.R.Civ.P. 50(b)(2)(B). According to Dranchak, Clarke told him that he was to be fired and added: "Look, I know how you feel, I was fired once for age myself." Clarke denies making any such statement, and there is reason to think that it may be a recent invention. (Dranchak did not include the statement in his contemporaneous notes or mention it during his first deposition.) Despite recognizing that he could not favor Clarke's version over Dranchak's, see *Mojica v. Gannett Co.*, 7 F.3d 552, 561 (7th Cir.1993) (en banc), the district judge held that the statement (if made) does not imply that Akzo engaged in age discrimination. Instead, the judge thought, it shows that Clarke wanted to assure Dranchak that he could bounce back from adversity and start over at another firm, as Clarke had done. Perhaps this is the best way to understand such a statement, but only the trier of fact may choose from among reasonable inferences—and the district judge was not the trier of fact on the ADEA claim. A reasonable jury *could* interpret the statement as a confession of intentional age discrimination, uncommon though confessions of legal wrongs may be.

To confess a legal wrong is not necessary to create a legal liability, however. The ADEA forbids an employer to make age the basis of adverse action, but it creates a remedy only if the forbidden consideration altered the employer's decision. Suppose an employee pulls out a pistol and shoots the corporation's president. The next day he receives a letter saying that his employment is at an end, because (a) he is too old, and (b) murder is against the corporation's rules. May he recover damages? We know from *McKennon v. Nashville Banner Publishing Co.*, — U.S. —, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), that if the sole consideration at the time of the discharge is age, and the employer finds another reason only later, then the employee may recover as damages the income he lost between the discharge and the discovery of a legally permissible reason. But if the employer knows of a legitimate and independently sufficient reason for discharge, and relies on this reason at the time of the discharge, then age did not lead to any adverse action. The plaintiff's inability to establish causation would doom the case. See *Gehring v. Case Corp.*, 43 F.3d 340 (7th Cir.1994); see also *Visser, supra.* *McKennon* makes this clear, too, by drawing a parallel between ADEA litigation and the mixed-motive analysis that *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), adopts for constitutional-tort litigation. See *McKennon*, — U.S. at —, 115 S.Ct. at 885. If there are two motives, each sufficient to account for the decision, then the fact that one of the motives is legally improper does not support a remedy as long as the employer can show that it would have made the same decision based on the legitimate ground alone—for take away the improper motive and the decision remains.

Dranchak might be entitled to some relief under *McKennon* if Akzo had relied on the resume fraud, which did not come to light until discovery in this litigation. But that is not what happened. Akzo stated that it discharged Dranchak for concealing from Clarke the sweetheart deal he had negotiated with Jadel, and then recommending that Jadel himself receive a favorable severance package. Not to put too fine a point on it, Dranchak was fired for theft. Akzo knew of these events, Dranchak concedes, before the discharge. Although Dranchak insists that

he told Clarke about the letter agreements before Akzo's board approved Jadel's severance package, and that Clarke was unconcerned at the time, the district court found otherwise in the ERISA portion of this litigation. That finding would be conclusive between the parties in any second trial of the ADEA claim—which obviates any need to decide who would have the burden of persuasion on the causation issue if the subject were open to independent examination (and whether the allocation of burdens under the ADEA should track that under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991). See *Doll v. Brown*, 75 F.3d 1200, 1202–04 (7th Cir.1996). The best Dranchak could do at another trial would be to persuade the jury that Akzo had a second, and unlawful, reason for the termination. Proof of that contention to a fare-thee-well would not entitle Dranchak to any remedy, given the lawful ground behind Akzo's decision.

This understanding depends, of course, on giving effect to the judge's ERISA decision in a later trial of the ADEA claim. Dranchak might respond that this deprives him of a jury trial on an element of his ADEA claim. Given the holding of *Dairy Queen* that a jury trial should precede a bench trial in order to avoid affording preclusive effect to the judge's findings, Dranchak might have a point—if he had made it. Although the ERISA claim was tried to the court at the same time as the other claims were tried to the jury, Dranchak did not ask the judge to withhold decision until a retrial of the ADEA claim could occur. He has not argued on appeal that the judge should have deferred decision. His only judge-jury issue concerns the effect, on the ERISA claim, of the vacated verdict on the state-law contract claim, and we have held that this argument is incorrect. The outcome of the ERISA litigation means that Dranchak cannot establish that his age caused his discharge. There would be no point to another trial, and the judgment is therefore

AFFIRMED.