130 F.3d 61
 21 Employee Benefits Cas. 2185,
Pens. Plan Guide (CCH) P 23939K
Kenneth BRILLINGER, Christine Grudzien, Frederick A. Holmes,
Fred M. Sloan, Laureen Warrick, for themselves and
all others similarly situated,
Plaintiffs-Appellants,
v.
GENERAL ELECTRIC COMPANY, RCA Corporation, Retirement Plan
for the Employees of RCA Corporation and
Subsidiary Companies, And GE Pension
Plan, Defendants-Appellees.
 No. 238, Docket 97-7092.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 3, 1997.
Decided Dec. 3, 1997.
 
 1
 Norman Zolot, Woodbridge, CT, for Plaintiffs-Appellants.
 
 
 2
 Mark S. Dichter, Philadelphia, PA (Brian J. Dougherty, Philadelphia, PA and Richard G. Rosenblatt Philadelphia, PA, on the Brief), for Defendants-Appellees.
 
 
 3
 BEFORE: MINER, LEVAL Circuit Judges, and GRIESA, District Judge.*
 
 The Claim
 GRIESA, District Judge:
 
 4
 Two class actions were brought in the district court, one by plaintiffs Brillinger, Grudzien, Holmes and Sloan, and the other by plaintiff Warrick. The complaints in the two actions asserted essentially the same claim. The actions were consolidated and both complaints were dismissed by Judge Dorsey. This appeal covers both actions.
 
 
 5
 The complaints make the following allegations. The statutory references are to sections of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq. ("ERISA").
 
 
 6
 RCA had a defined benefit pension plan within the meaning of 29 U.S.C. § 1002(35). Members of the plaintiff class made contributions to this plan. In 1986 RCA merged into a wholly-owned subsidiary of GE, which also had a defined benefit pension plan. Effective January 1, 1989 the RCA plan and the GE plan merged.
 
 
 7
 As of January 1, 1988, the RCA plan had assets of $2,812,386,957 and liabilities of $1,486,009,771, leaving "residual assets" of $1,344,377,186. The residual assets were even greater as of the time of the plans' merger, although the exact figure is not shown. Plaintiffs claim that, when the two plans merged, this was an event which should have led to a revision of benefits to be paid to the former RCA employees to take into account the residual assets in the RCA plan attributable to employee contributions. It is claimed that this revision was required by 29 U.S.C. §§ 1058 and 1344(d)(3). No such revision has been made. Plaintiffs seek a judgment declaring their rights.
 
 Discussion
 
 8
 The definition of "defined benefit plan" is given in 29 U.S.C. § 1002(35):
 
 
 9
 (35) The term "defined benefit plan" means a pension plan other than an individual account plan, ...
 
 
 10
 An "individual account plan," also referred to as a "defined contribution plan," is defined in 29 U.S.C. § 1002(34). In a defined contribution plan the benefits are based upon the contributions, subject to gains or losses which occur in the plan's assets.
 
 
 11
 (34) The term "individual account plan" or "defined contribution plan" means a pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account.
 
 
 12
 By contrast, a defined benefit plan is one where the employee, upon retirement, is entitled to a fixed periodic payment regardless of the performance of the plan's assets. Commissioner v. Keystone Consolidated Industries, 508 U.S. 152, 154, 113 S.Ct. 2006, 2009, 124 L.Ed.2d 71 (1993). If unsuccessful investment of the plan assets impairs the plan's ability to make up the scheduled payments from the plan assets, the employer must nonetheless make up any deficiency from its own assets. By the same token, if the investment of plan assets is successful and produces a surplus, the employer benefits. Malia v. General Electric Co., 23 F.3d 828, 830 n. 2 (3d Cir.1994).
 
 
 13
 ERISA contains a provision, 29 U.S.C. § 1058, dealing with the merger of pension plans:
 
 
 14
 A pension plan may not merge or consolidate with, or transfer its assets or liabilities to, any other plan ..., unless each participant in the plan would (if the plan then terminated) receive a benefit immediately after the merger, consolidation, or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation, or transfer (if the plan had then terminated).
 
 
 15
 Under this provision, a merger may not cause reduction of the benefit below what it would be upon a hypothetical termination of the plan.
 
 
 16
 In so providing, Congress obviously intended to refer to those portions of ERISA which deal with the termination of a plan. However, § 1058 does not specify which of the several provisions relating to termination are to be applied.
 
 
 17
 In contending that the present merger violates § 1058, plaintiffs point to the section which deals with distribution of residual assets at the time a plan is terminated. According to this portion of ERISA, if there are more than enough assets to cover the accrued benefit liabilities, the excess--or the residual assets--may be distributed to the employer. 29 U.S.C. §§ 1344(d)(1) and (2). However, the right of the employer to receive the residual assets is qualified by § 1344(d)(3)(A) which states:
 
 
 18
 (3)(A) ... if any assets of the plan attributable to employee contributions remain after satisfaction of all liabilities described in subsection (a) of this section, such remaining assets shall be equitably distributed to the participants who made such contributions or their beneficiaries.
 
 
 19
 Thus, upon termination of a plan, in the event there are residual assets attributable to employee contributions, such assets must be distributed to the contributing employees.
 
 
 20
 Plaintiffs argue that, since a merger is to be treated under § 1058 like a termination for the purpose of benefit calculation, then a plan's participants should receive whatever they would receive upon a termination, including residual assets, as provided for in § 1344(d)(3)(A). They argue that § 1058 should be construed as requiring that the amount of such residual assets be converted into increased benefits.
 
 
 21
 We do not agree with plaintiffs' view of the statute.
 
 
 22
 Section 1058 deals with the level of post-merger benefits, and in dealing with this issue resort must be had to those parts of the termination provisions which deal with the analogous subject--i.e. the level of benefits following termination. When the termination provisions are analyzed, it will be seen that those dealing with benefits are quite distinct from those dealing with distribution of residual assets.
 
 
 23
 The basic procedures to be followed when a plan is terminated are specified in 29 U.S.C. §§ 1341 and 1342. There must be an assessment of the terminating plan's assets and accrued benefit liabilities. Assets must be allocated to various types of benefit liabilities in order of priority pursuant to § 1344(a). To the extent that assets are sufficient to cover liabilities under a plan, the administrator of a terminating plan is directed to "fully provide all benefit liabilities under the plan." § 1341(b)(3)(A)(ii). This may involve purchasing "irrevocable commitments from an insurer to provide all benefit liabilities under the plan." § 1341(b)(3)(A)(i). Where the assets are sufficient, the level of benefits to be paid following termination will be equal to what is specified in the plan.
 
 
 24
 There are several provisions dealing with the procedures to be used, and the level of benefits to be paid, where a plan falls into difficulty and where the assets are insufficient to cover liabilities. See e.g., § 1341(c). Ultimately, the Pension Benefit Guaranty Corporation guarantees the payment of benefits subject to certain limitations specified in §§ 1322 and 1361. For instance, benefits in effect for less than five years at the time of termination are not fully guaranteed. § 1322(b).
 
 
 25
 Of course, the issue in the present case relates to excess assets. The statutory mechanism for dealing with this situation in an actual termination situation is not to increase the level of benefits, but to make distribution of the residual assets at the time of the termination. Sections 1344(d)(1) and (2) provide that any residual assets may be distributed to the employer if all liabilities of the plan to participants and their beneficiaries have been satisfied, as long as this distribution does not contravene any other provision of law and as long as the plan allows for such distribution. However, the right of the employer to receive residual assets is subject to § 1344(d)(3)(A), which is the provision relied upon by plaintiffs and which has already been quoted. It specifies that, in the event that there are residual assets attributable to employee contributions, such assets must be distributed to the contributing employees.
 
 
 26
 Thus, when a plan is terminated, and where there are residual assets over and above what is necessary to cover benefit liabilities, the fund participants receive both the agreed-upon benefits and, in addition, that portion of the residual assets attributable to their contributions. This brings us back to plaintiffs' argument that, pursuant to § 1058's reference to termination, the participants in a merging plan should receive all of this in the form of increased benefits following a merger.
 
 
 27
 But the termination provisions of the statute make a distinction between paying benefits, generally on an on-going basis, and the one-time distribution of residual assets. Since § 1058 deals with the level of benefits, the reasonable interpretation of that section is that it refers to those portions of the termination provisions regarding the level of benefits, rather than the part about distributing residual assets. The fact that upon actual liquidation a participant may be entitled to receive some distribution of residual assets does not change the amount to be received as a "benefit." Section 1058 requires only that the "benefit" payable upon hypothetical termination be no less after than before the merger. It makes no reference to amounts the participants might receive as distribution of residual assets upon such hypothetical termination.
 
 
 28
 It is also important to recall the distinction made in the statute between a defined benefit plan and an individual account or defined contribution plan. Participants in a defined benefit plan are not entitled to increases in benefits because successful investment causes assets to grow to be greater than liabilities. There is nothing in the statute to the effect that such growth in assets will cause an increase in benefits payable to participants at the time of a merger. Nothing in § 1058 or any other part of the statute is to the effect that a merger turns a defined benefit plan into a defined contribution plan, either temporarily or permanently.
 
 
 29
 We therefore hold that the participants in the RCA plan were not entitled to have their benefits increased at the time of the merger with the GE plan, to take into account the existence of the RCA plan's residual assets.
 
 
 30
 The issue we have dealt with here was addressed by the Third Circuit in Malia v. General Elec. Co., 23 F.3d 828 (3d Cir.1994). Our conclusion is the same although our discussion is somewhat different.
 
 
 31
 We affirm the dismissal of the complaints by the district court.
 
 
 
 *
 Hon. Thomas P. Griesa, Chief Judge, United States District Court for the Southern District of New York, sitting by designation