174 F.3d 870
 22 Employee Benefits Cas. 2794,
Pens. Plan Guide (CCH) P 23,954
COMMONWEALTH EDISON COMPANY and Trustees of The Commonwealth
Edison Service Annuity Fund, Plaintiffs-Appellees,
v.
Sarah D. VEGA, in her official capacity as Director, State
of Illinois Department of Financial Institutions,
Defendant-Appellant.
 No. 98-2417.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 16, 1999.
Decided April 13, 1999.
 
 Hugh C. Griffin, Laurence A. Hansen (argued), Lord, Bissell & Brook, Glenn D. Newman, Chicago, IL, for Plaintiffs-Appellees.
 Jerald S. Post (argued), Office of the Attorney General, Civil Appeals Division, Chicago, IL, for Defendant-Appellant.
 David J. Epstein, Boston, MA, Robert P. Krenkowitz, Tucson, AZ, for National Association of Unclaimed Property Administrators.
 Gail A. Perry (argued), Department of Labor, Office of the Solicitor, Washington, DC, for Alexis M. Herman.
 Before POSNER, Chief Judge, and FLAUM and ROVNER, Circuit Judges.
 POSNER, Chief Judge.
 
 
 1
 Commonwealth Edison Company and its defined-benefit pension plan brought this suit under ERISA, 29 U.S.C. §§ 1001 et seq., against the administrator of the Illinois Uniform Disposition of Unclaimed Property Act, 765 ILCS 1025, seeking a declaration that ERISA preempts the Illinois statute to the extent that the statute regulates such plans. The district court agreed, precipitating this appeal by the state. A threshold question unremarked by the parties or the district judge concerns the state's Eleventh Amendment immunity to being sued in a federal court without its consent. A suit against a state officer in his or (in this case) her official capacity is deemed a suit against the state, e.g., Kentucky v. Graham, 473 U.S. 159, 169-70, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); V-1 Oil Co. v. Utah State Dept. of Public Safety, 131 F.3d 1415, 1421 (10th Cir.1997), and a mere failure to raise an Eleventh Amendment defense in court is not treated as a waiver, e.g., Edelman v. Jordan, 415 U.S. 651, 677-78, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); Estate of Porter by Nelson v. Illinois, 36 F.3d 684, 691 n. 3 (7th Cir.1994); V-1 Oil Co. v. Utah State Dept. of Public Safety, supra, 131 F.3d at 1419-20; Suarez Corporation Industries v. McGraw, 125 F.3d 222, 227 (4th Cir.1997), even though the Supreme Court has now made clear that a violation of the Eleventh Amendment does not deprive the federal court of jurisdiction over the suit. Patsy v. Board of Regents, 457 U.S. 496, 515 n. 19, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997). But the only relief sought by the plaintiffs in this case is an injunction against enforcing a state statute that they contend is unenforceable by virtue of the supremacy clause of the Constitution, and that is relief equally available, with no Eleventh Amendment hurdle to overcome, by a suit against the responsible official in her private capacity. See Idaho v. Coeur d'Alene Tribe of Idaho, supra, 521 U.S. at 269, for the general principle, and Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), and Burgio & Campofelice, Inc. v. New York State Dept. of Labor, 107 F.3d 1000, 1006-07 (2d Cir.1997), for its application to ERISA. In consequence, federal suits against state officials for purely injunctive relief are treated in effect as suits against them in their personal capacity, lifting the Eleventh Amendment bar. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); Kentucky v. Graham, supra, 473 U.S. at 167 n. 14.
 
 
 2
 The Uniform Disposition of Unclaimed Property Act, in force in about a third of the states, requires anyone in possession of intangible property that is unclaimed by its owner for seven years (five under the Illinois version of the Act) to transfer the property to the custody of the state. A subsequent uniform law, the Uniform Unclaimed Property Act of 1981, is in force in most of the rest of the states; so far as relates to this case, the provisions of the two uniform laws are the same. These are not escheat statutes. The state does not acquire title to the property. It is merely a custodian. The owner can reclaim his property at any time. Prefatory Note to 1995 Act, 8B Uniform Laws Annot., 1998 Supp. 84. But not only does the state have the free use of the property unless and until the owner reclaims it; the state is not required to (and Illinois does not) pay any interest to a reclaiming owner. 765 ILCS § 1025/15; see also Uniform Unclaimed Property Act of 1981, § 21 (§ 11 of the 1995 revision of this Act). In effect, the property is an interest-free loan to the state--in perpetuity if the owner never shows up to claim it.
 
 
 3
 Illinois seeks to apply the Uniform Act to benefits payable under Com Ed's pension plan that are not claimed by a plan beneficiary within five years. When benefits are due to a participant in the plan, the plan writes a check to the participant. Until the participant deposits or cashes the check and the check is paid by the plan through the system for clearing bank transactions, the money due the participants remains in the plan's coffers. It is placed in a separate account as soon as the check is written, but if the check isn't cashed within a year the money is retransferred to the general account and is available to pay other participants. Com Ed does not and could not (without adverse tax consequences) impose a deadline on when the beneficiary may cash his check. See 26 C.F.R. § 1.411(a)-4(b)(6). It could be five, or ten, or even more than ten years after the check was written. All this time the plan will have the use of the money due the beneficiary. Were the plan to be terminated, the administrator would have a legal duty to search and make provision for missing beneficiaries. 29 U.S.C. §§ 1056(f), 1350. But until then, the plan's only duty of search is whatever is implicit in the fiduciary obligation that ERISA imposes on plans. 29 U.S.C. § 1104(a).
 
 
 4
 The Com Ed plan owes about $125,000 to beneficiaries who have not yet cashed or deposited their checks even though more than five years have passed since the checks were written. The state wants this money. The plan wants to retain it. Com Ed wants the plan to retain it too, for even though money in the plan cannot be kicked back to Com Ed unless and until the plan is terminated and is determined to be overfunded, 29 U.S.C. § 1344(d); Mead Corp. v. Tilley, 490 U.S. 714, 718, 109 S.Ct. 2156, 104 L.Ed.2d 796 (1989); Brillinger v. General Electric Co., 130 F.3d 61, 62 (2d Cir.1997), the more money there is in the plan, the less money Com Ed will be required to contribute to it to make sure that the plan has enough to meet its obligations. 26 U.S.C. §§ 412(a), (b)(3); Hughes Aircraft Co. v. Jacobson, --- U.S. ----, ----, 119 S.Ct. 755, 761, 142 L.Ed.2d 881 (1999); Nachman Corp. v. Pension Benefit Guaranty Corp., 446 U.S. 359, 363-64 n. 5, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980). The parties are thus fighting over who gets to keep the interest on this money--the plan, and perhaps ultimately Com Ed, or the state.
 
 
 5
 ERISA preempts any state regulation that "relates to" an ERISA plan. 29 U.S.C. § 1144(a); De Buono v. NYSA-ILA Medical & Clinical Services Fund, 520 U.S. 806, 809 n. 1, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997); Dranchak v. Akzo Nobel Inc., 88 F.3d 457, 459 (7th Cir.1996). The Uniform Act, although it does not refer explicitly to ERISA plans, relates to the Com Ed plan directly and substantially. Remember that until the check to the beneficiary is actually presented to the plan for payment through the banking system, and paid, the money due to the beneficiary is an asset of the plan. The state thus wants to take a chunk of an ERISA plan's assets and put it in the state treasury. After that happens, any beneficiary of the plan who wants his benefits will have to apply to the state for them. The state becomes the plan administrator with respect to those assets. Not only does the state become the custodian of the assets, in violation of ERISA's provisions regarding plan administration, especially 29 U.S.C. § 1103(c)(1); see Boggs v. Boggs, 520 U.S. 833, 845-46, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997); it depletes those assets, by taking the interest that accrues on them. If the ERISA plan entitled a beneficiary to interest for the period between when benefits were due him and when he actually collected them, the state would actually be reducing his ERISA benefits. Even if the plan does not provide for interest, as Com Ed's does not, the state would still be reducing the plan's assets. Suppose the benefits due the participant in year t are $10,000, and he doesn't claim them until year t+6, by which time $10,000 in plan assets would have grown through the operation of compound interest to $14,000. Then, were it not for the Uniform Act, the assets of the plan would be greater by $4,000. The Act is the device by which the state appropriates those assets for itself.
 
 
 6
 It depletes those assets in another way, by subjecting the plan to the varying laws of the different states. New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 657-58, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). Participants in the Com Ed plan are scattered over 44 states. Though there are only two basic state-law regimes governing unclaimed property (the two uniform laws), states have tended to custom-tailor whichever uniform law they have chosen to their particular needs. The consequence is numerous variations in the amount of time before the state takes over the money (recall that Illinois has shortened the period of the Uniform Disposition of Unclaimed Property Act) and in the formalities for claiming the money from the state. Russell E. Greenblatt, "ERISA Preemption of State Unclaimed Property and Escheat Laws," 9 Benefits L.J. 51 (1996). Several states have not even modeled their unclaimed-property laws on either of the uniform laws, but have gone their own way completely.
 
 
 7
 We do not put too much weight on this point, because Com Ed has made no effort to quantify the burden of compliance. We are more concerned about the confiscation of interest and the usurpation of administration. At argument we asked the state's lawyer whether it would make any difference to his argument if the Illinois version of the Uniform Disposition of Unclaimed Property Act required the plan to hand over benefits unclaimed for two weeks rather than five years, and he said it would not. In such a case it would be blindingly obvious that the state was taking over the administration of an ERISA plan; it is only a little less obvious when the period is longer.
 
 
 8
 The state reinforces this characterization of the operation of the Uniform Act when it argues that its having custody of the unclaimed benefits gives the beneficiaries more secure protection than the retention of custody by the plan would. The State of Illinois has better credit than Commonwealth Edison. And while the pension plan is funded--that is, its assets, which Com Ed cannot touch, are actuarially equivalent to its expected obligations to participants and beneficiaries, 29 U.S.C. sec. 1082; Hughes Aircraft Co. v. Jacobson, supra, --- U.S. at ---- - ----, 119 S.Ct. at 761-62 (1999)--and vested benefits under a defined-benefits plan are federally insured, 29 U.S.C. §§ 1322, 1361, participants and beneficiaries are not completely protected. Actuarial projections are by definition probabilistic rather than certain, and the federal insurance is capped at a fairly modest level. § 1322(b)(3); Mertens v. Hewitt Associates, 508 U.S. 248, 250, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). So state custody does add a dollop of safety to unclaimed ERISA benefits, though given the State of Illinois's reputation as a late payer, the tiny increment in safety may well be offset by delay in payment and resulting loss in the interest value of the money. In any event, ERISA's preemption clause, and the case law interpreting it, make clear that a state cannot take over the operation of an ERISA plan, no matter how forcefully it argues that it can do a better job than the plan's trustees and administrators. See Mackey v. Lanier Collection Agency & Service, Inc., 486 U.S. 825, 829-30, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988); cf. Shaw v. Delta Air Lines, Inc., supra, 463 U.S. at 104-06; Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 524, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981); MacLean v. Ford Motor Co., 831 F.2d 723, 727-28 (7th Cir.1987).
 
 
 9
 The state argues that Mackey v. Lanier Collection Agency & Service, Inc., supra, 486 U.S. at 835-38, which holds that ERISA does not preempt the application of state garnishment statutes to employee welfare plans, controls the present case. A vital distinction is overlooked. If an ERISA beneficiary owes money, the creditor can use garnishment to get that money from the plan rather than having to wait until it is paid out to the beneficiary. But the state in such a case is not taking plan assets or administering the plan. It is merely eliminating an intermediate transaction in the process by which benefits are paid to the beneficiary and seized by the creditor. The amount of assets in the plan is unaffected by whether the money is checked out to the beneficiary or the beneficiary's creditor.
 
 
 10
 Two cases uphold the application of state escheat laws to unclaimed benefits under ERISA plans, Aetna Life Ins. Co. v. Borges, 869 F.2d 142 (2d Cir.1989), and Attorney General v. Blue Cross & Blue Shield of Michigan, 168 Mich.App. 372, 424 N.W.2d 54, 58-59 (1988) (per curiam). A third disagrees. Blue Cross & Blue Shield of Florida, Inc. v. Department of Banking & Finance, 791 F.2d 1501 (11th Cir.1986) (per curiam). We need not takes sides. Escheat laws determine title. If state law vests title to the state in unclaimed benefits, those benefits no longer belong to the beneficiary; they belong to the state. In fact, the state is the beneficiary. Compare two cases. In one, the plan participant designates his spouse as the beneficiary if the participant dies. He dies, and so the benefits are paid to the surviving spouse. This is no more a depletion of fund assets than when the benefits are paid to a creditor. In the other case, the plan participant has failed to designate a beneficiary, and suppose that the state, by operation of its escheat law (which makes the state in effect the heir of the heirless), becomes the beneficiary. Just as in the first case, payment to the state, if the participant dies, does not deplete the assets of the fund; it is simply payment to the participant's designated-by-law beneficiary.
 
 
 11
 This case is different because the state does not claim to have an ownership interest in unclaimed benefits. It doesn't want to step into the shoes of the beneficiary; it wants to step into the plan's shoes. That is precisely what ERISA bars. So clear is this (see Chevron U.S.A. Inc. v. National Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)) that we don't have to get into the issue, much discussed in the briefs, of the precise weight to be given the Department of Labor's advisory opinion letters (and its amicus curiae brief), which advise that ERISA indeed preempts state unclaimed-property laws. The issue of the weight to be given under the Chevron doctrine to informal expressions of agencies' views is unresolved, see Commissioner v. Keystone Consolidated Industries, Inc., 508 U.S. 152, 162 n. 3, 113 S.Ct. 2006, 124 L.Ed.2d 71 (1993), and compare Kilgore v. Outback Steakhouse of Florida, Inc., 160 F.3d 294, 302 (6th Cir.1998), with Morton Community Unit School District No. 709 v. J.M., 152 F.3d 583, 585 (7th Cir.1998), with Herman v. NationsBank Trust Co., 126 F.3d 1354, 1363 (11th Cir.1997), though Auer v. Robbins, 519 U.S. 452, 462, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997), indicates that some deference, at least, is to be paid to views set forth in an amicus curiae brief filed by an agency. A further complication here is the uncertainty of whether it is appropriate to defer to an agency that is seeking to expand federal power at the expense of the states through a generous construal of a preemption clause. For varying views on that question, compare Oklahoma Natural Gas Co. v. FERC, 28 F.3d 1281, 1283-84 (D.C.Cir.1994), and Industrial Truck Ass'n, Inc. v. Henry, 125 F.3d 1305, 1311 (9th Cir.1997), with Colorado Public Utilities Comm'n v. Harmon, 951 F.2d 1571, 1579 (10th Cir.1991), and Teper v. Miller, 82 F.3d 989, 998 (11th Cir.1996) (opinion of one judge). A final complication is that the administration of ERISA is shared between the Labor Department and the Treasury Department. Treasury has issued a regulation that can be interpreted to assume that uncashed ERISA plan benefits checks are subject to state escheat laws. 26 C.F.R. § 1.411(a)-4(b)(6). But we have seen that escheat laws are pertinently different from unclaimed property laws. So there is no conflict between the two agencies and therefore no need to decide which should have the whip hand.
 
 
 12
 AFFIRMED.