**Patricia A. VESELY, Plaintiff,**

v.

**CONTINENTAL CASUALTY COMPANY, Defendant.**

No. 99 C 8103.

United States District Court, N.D. Illinois, Eastern Division.

June 23, 2000.

Roger J. Guerin, Alan S. Madans, Robin Korman Powers, Rothschild, Barry & Meyers, P.C., Chicago, Ill, for plaintiff.

Steven L. Gillman, Todd David Steenson, Fox and Grove, Chartered, Chicago, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Patricia Vesely filed a four-count complaint against Continental Casualty Company ("Continental") alleging various causes of action arising from Continental's termination of her employment. The parties have filed cross motions for summary

judgment on Count III, in which Vesely asserts that Continental breached a written contract to pay severance benefits.[1] Because the contract at issue is part of a plan governed by ERISA, 29 U.S.C. § 1001 *et seq.*, Vesely's state law breach of contract claim is preempted and we grant judgment in favor of Continental on Count III.

## BACKGROUND

In 1995, Continental purchased and merged operations with another insurance company. Predictably, reductions in force followed. During the merger process, Continental reviewed its severance benefits policy and concluded, in part because the other company's severance policy provided greater benefits, to change its severance package. Specifically, it preserved the established policy as "Option 1" and developed a second severance track it named "Option 2."

An employee choosing Option 1 would receive 26 weeks of benefits; under Option 2, an employee would receive 52 weeks of benefits. But an employee electing Option 2 was required to sign a document titled "Exception to Severance Policy: General Release and Settlement Agreement," in which the employee released all claims against Continental. Under either option, an employee who declines the offer of a new position is not eligible for benefits unless the offer includes a 10% pay cut, and employees reinstated within the time period of their severance are required to repay money received for the remainder of the period. Additionally, under either option, the employee's health benefits continued during the severance period. Since the new policy went into effect in 1995, Continental has offered the options choice to more than 1,000 employees fired in reductions in force.

On March 25, 1999, Continental informed Vesely that her position, Secretary II in the Commercial Insurance Ops Department, would be eliminated on May 28, 1999. One hundred and eighteen other employees in the Commercial Insurance Department received similar employment termination notices.

On that same day, March 25, Vesely received a packet of materials outlining benefits for which she might be eligible. (R.13, Costello Aff. Ex. A, RIF Information Package.) Among those materials was a cover letter explaining the contents of the packet; a severance benefit option worksheet setting forth the benefits Vesely would receive under Option 1 and Option 2; a document calculating the "Total Enhanced Severance Package" Vesely would receive if she elected Option 2 ($30,704.27); a "Commercial Insurance Employee Fact Sheet" explaining her severance options and the conditions imposed under each option; and a copy of the General Release, with instructions that Vesely must sign it to receive the enhanced severance benefits under Option 2.

On April 6, 1999, Vesely signed and returned the General Release to Mariann Costello, the employee charged with coordinating severance benefits to RIF employees. On May 26, two days before the scheduled termination of Vesely's job, however, Continental fired Vesely for alleged misconduct and refused to pay her any severance benefits. She filed this lawsuit alleging, among other things, breach of contract based on Continental's refusal to pay the severance benefits listed in the General Release she signed.

## ANALYSIS

At issue is whether the General Release signed by Vesely is actually part of an employee benefit plan. ERISA

---

**1.** Vesely also claims she was fired because of her sex in violation of Title VII (Count I), she was fired because of her age in violation of the ADEA (Count II), and that Continental failed to pay benefits due under its employee benefit package in violation of ERISA (Count IV). We stayed Continental's separate summary judgment motion on Counts I, II, and IV pending resolution of the motion currently under consideration.

"preempts a state law claim if the claim requires the court to interpret or apply the terms of an employee benefit plan, which the Supreme Court has defined as 'benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation.'" *Collins v. Ralston Purina Co.*, 147 F.3d 592, 595 (7th Cir.1998) (*quoting Fort Halifax Packaging Co. v. Coyne*, 482 U.S. 1, 11, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987)).

■ It is beyond question that the General Release required to receive benefits under Option 2 is related to Continental's severance package, which in turn is an employee benefit plan governed by ERISA. Here, as in *Collins,* the procedures necessary to administer Continental's obligations under Options 1 and 2 are extensive, and Vesely's attempt to squeeze her case within the "one-time, lump sum payment" facts of *Fort Halifax* is simply futile. Here, as opposed to the one-time disbursement at issue in *Fort Halifax,* Continental's plan requires "multiple payments to various [employees], at different times and under different circumstances." *Collins,* 147 F.3d at 595. Indeed, here, the General Release actually provides a list of the 119 employees fired in the reduction in force that caught Vesely, their positions, their ages, and whether they were offered Option 2. Both Option 1 and Option 2 have separate eligibility guidelines and formulae for calculating the disbursement due; both condition payments to those who have not been offered a replacement position; and, under either option, Continental agreed to continue health and dental care coverage, life insurance, and other group benefits. Further, former employees who receive severance pay but are subsequently re-hired by Continental must repay benefits for the remaining severance period. The administrative tasks required to organize these benefits, not to mention the record-keeping, is significant and ongoing.

Vesely makes much of the word "exception" in the General Release's title: "Exception to Severance Policy." She argues that the word "exception" takes the General Release out of Continental's ERISA plan; that the plain meaning of "exception" demonstrates the document's status as an independent contract. We believe, however, that the document's title, as well as its contents, clearly demonstrates that the Release is an integral component of the ERISA plan. The only way a Continental employee fired in a RIF can obtain the enhanced 52–week benefits is to sign the Release. Obviously, the Release "relates to" Continental's benefit plan. *See Dranchak v. Akzo Nobel Inc.*, 88 F.3d 457, 459 (7th Cir.1996) ("The letter agreements affect ERISA plans, state law enforcing the letter agreements would relate to the plans, and the promises they contain therefore must stand or fall together under federal common law.").

Vesely's attempt to divorce the $30,704.27 payment provision from the other promises contained in the Release is no more successful: "Portions of the letter agreements that promise the continuation of wages, favorable recommendations, and so on, cannot sensibly be divorced from the portions that deal with pension and welfare benefits." *Dranchak,* 88 F.3d at 459.

In sum, the General Release Vesely signed relates to Continental's ERISA plan. Therefore, ERISA preempts Vesely's state law contract claim. For this reason, we deny Vesely's summary judgment motion on Count III and grant Continental's cross motion for summary judgment on Count III.

## CONCLUSION

Vesely's motions for partial judgment on the pleadings, (R. 7–1), and for partial summary judgment on Count III, (R. 7–2), are denied; Continental's cross-motion for summary judgment as to Count III, (R. 9–1), is granted.

The stay of proceedings on Continental's motion for summary judgment on the remaining claims, (R. 18), is hereby lifted. Having reviewed the moving papers, we

conclude that the issues surrounding Vesely's ERISA claim are too factual to support summary judgment. Although Continental's motion with respect to Vesely's Title VII and ADEA claims appears well taken, we deny Continental's summary judgment motion, (R. 18–1), in its entirety in favor of efficient adjudication. We urge Vesely to reevaluate these claims at the close of discovery and, if necessary, will revisit the issue at the close of Vesely's case-in-chief.

Finally, the parties have filed a motion to extend the discovery schedule. (R. 25–1.) We grant the motion; discovery will close on August 31, 2000. Trial is hereby set for September 18, 2000, at 10:00 a.m. The Court will hold a status hearing in open court on July 20, 2000, at 9:45 a.m.